# In the United States Court of Federal Claims
## OFFICE OF SPECIAL MASTERS
No. 19-986V
(Not to be published)

| | | |
|---|---|---|
| * * * * * * * * * * * * * * * * * * * * * * * * | | |
| ALEXANDER PRAGUE, | * | |
| | * | Chief Special Master Corcoran |
| Petitioner, | * | |
| | * | Filed: March 10, 2022 |
| v. | * | |
| | * | |
| SECRETARY OF HEALTH AND | * | |
| HUMAN SERVICES, | * | |
| | * | |
| Respondent. | * | |
| * * * * * * * * * * * * * * * * * * * * * * * * | | |

*Mark Theodore Sadaka*, Law Offices of Sadaka Associates, LLC, Englewood, NJ, for Petitioner.

*Naseem Kourosh*, U.S. Dep't of Justice, Washington, DC, for Respondent.

**DECISION GRANTING ATTORNEY'S FEES AND COSTS**[1]

On July 10, 2019, Lauretta Prague filed a petition on behalf of then-minor child Alexander Prague seeking compensation under the National Vaccine Injury Compensation Program (the "Vaccine Program").[2] Petitioner alleged that Mr. Prague suffered from vaccine-induced chronic migraine headaches, either "caused-in-fact" or significantly aggravated by the meningococcal vaccines, after receipt of the Trumenba (meningococcal B) and Menactra (meningococcal)

---

[1] Although I have not formally designated this Decision for publication, it will nevertheless be posted on the United States Court of Federal Claims website, in accordance with the E-Government Act of 2002, 44 U.S.C. § 3501 (2012). As provided by 42 U.S.C. § 300aa-12(d)(4)(B), however, the parties may object to the Decision's inclusion of certain kinds of confidential information. Specifically, under Vaccine Rule 18(b), each party has fourteen days within which to request redaction "of any information furnished by that party: (1) that is a trade secret or commercial or financial in substance and is privileged or confidential; or (2) that includes medical files or similar files, the disclosure of which would constitute a clearly unwarranted invasion of privacy." Vaccine Rule 18(b). Otherwise, the whole Decision will be available to the public. *Id*.

[2] The Vaccine Program comprises Part 2 of the National Childhood Vaccine Injury Act of 1986, Pub. L. No. 99-660, 100 Stat. 3758, codified as amended at 42 U.S.C. §§ 300aa-10 through 34 (2012) ("Vaccine Act" or "the Act"). Individual section references hereafter will be to § 300aa of the Act (but will omit that statutory prefix).

vaccines ("meningococcal vaccines") on July 16, 2016. Petition (ECF No. 1) at 1–2. The caption was later amended to make Mr. Prague the Petitioner. ECF No. at 9.

This matter was originally assigned to a different special master, but reassigned to me on January 28, 2021. ECF No. 28. Respondent contested entitlement. *See* Rule 4(c) Report, dated May 4, 2021 (ECF No. 32). I had ordered Petitioner earlier that year to file an expert report in support of the claim, leading to multiple requests for extensions of time to so act. I repeatedly granted those requests, although I noted by fall 2021 that the report was due in mid-November, and that (given how much time had passed) no further extensions would be permitted. Docket Entry Order, dated Oct. 12, 2021.

On the day the report was due, counsel offered a status report indicating that he had not been able to confer with his client. Status Report, dated Nov. 10, 2021 (ECF No. 39). I therefore ordered Petitioner to either request the case's dismissal or move for a ruling on the record in his favor. Docket Entry Order, dated Nov. 12, 2021. Petitioner subsequently filed another status report indicating (again) counsel's inability to confer with Petitioner. Status Report, dated Jan. 6, 2022, at 1 (ECF No. 40). I therefore ordered Petitioner to show cause why the case should not be dismissed for failure to comply. Order, dated Jan. 10, 2022 (ECF No. 41). Petitioner then filed an Unopposed Motion to Dismiss, which I granted. Decision, dated Jan. 31, 2022 (ECF No. 43).

Petitioner now requests a total of $23,741.57 in attorney's fees and costs ($22,699.30 in fees plus $1,042.27 in costs) for the work of his attorney, Mr. Mark Sadaka, and a paralegal, from May 31, 2019 to the present date. ECF No. 44-1 at 10–26 ("Motion"). Respondent opposed the fees request on February 18, 2022, arguing that the claim lacks reasonable basis. *See* Response, Feb. 18, 2022 (ECF No. 47) ("Response") at 2. Petitioners reacted to Respondent's objection on February 25, 2022. *See* Reply, dated Feb. 25, 2022 (ECF No. 50) ("Reply").

For the reasons set forth below, I hereby **GRANT** Petitioner's motion, awarding fees and costs in the total amount of **$23,741.57**.

## ANALYSIS

### I.     Petitioner's Claim had Reasonable Basis

Although the Vaccine Act only guarantees a reasonable award of attorney's fees and costs to successful petitioners, a special master may also award fees and costs in an unsuccessful case if: (1) the "petition was brought in good faith"; and (2) "there was a reasonable basis for the claim for which the petition was brought." Section 15(e)(1). Importantly, establishing reasonable basis does not *automatically* entitle an unsuccessful claimant to fees, but is instead a threshold obligation; fees can still thereafter be limited, if unreasonable, or even denied entirely.

I have in prior decisions set forth at length the criteria to be applied when determining if a claim possessed "reasonable basis" sufficient for a fees award. *See, e.g.*, *Sterling v. Sec'y of Health & Hum. Servs.*, No. 16-551V, 2020 WL 549443, at *4 (Fed. Cl. Spec. Mstr. Jan. 3, 2020). A claim's reasonable basis[3] must be demonstrated through some objective evidentiary showing. *Cottingham v. Sec'y of Health & Hum. Servs.*, 971 F.3d 1337, 1344 (Fed. Cir. 2020) (citing *Simmons v. Sec'y of Health & Hum. Servs.*, 875 F.3d 632, 635 (Fed. Cir. 2017)). This objective inquiry is focused on the *claim*—counsel's conduct is irrelevant (although it may bulwark good faith). *Simmons*, 875 F.3d at 635. Reasonable basis inquiries are not static—they evaluate not only what was known at the time the petition was filed, but also take into account what is learned about the evidentiary support for the claim as the matter progresses. *Perreira v. Sec'y of Health & Hum. Servs.*, 33 F.3d 1375, 1377 (Fed. Cir. 1994) (upholding the finding that a reasonable basis for petitioners' claims ceased to exist once they had reviewed their expert's opinion, which consisted entirely of unsupported speculation).

The standard for reasonable basis is lesser (and thus inherently easier to satisfy) than the preponderant standard applied when assessing entitlement, as cases that fail can still have sufficient objective grounding for a fees award. *Braun v. Sec'y of Health & Hum. Servs.*, 144 Fed. Cl. 72, 77 (2019). The Court of Federal Claims has affirmed that "[r]easonable basis is a standard that petitioners, at least generally, meet by submitting evidence." *Chuisano v. Sec'y of Health & Hum. Servs.*, 116 Fed. Cl. 276, 287 (Fed. Cl. 2014) (internal quotations omitted) (affirming special master). The factual basis and medical support for the claim is among the evidence that should be considered. *Carter v. Sec'y of Health & Hum. Servs.*, 132 Fed. Cl. 372, 378 (Fed. Cl. 2017). Under the Vaccine Act, special masters have "maximum discretion" in applying the reasonable basis standard. *See, e.g.*, *Silva v. Sec'y of Health & Hum. Servs.*, 108 Fed. Cl. 401, 401–02 (Fed. Cl. 2012).[4]

This case was dismissed before Petitioner had filed an expert report in favor of his claim. But Respondent contends that the medical records themselves do not provide any basis for the claim. Specifically, Respondent notes that the record establishes that Mr. Prague suffered from chronic migraines in years prior to vaccinations, preventing him from establishing causation for subsequent symptoms. Response at 2, 10; Ex. 1 at 79, 85, 96, 761, 1045, 1051–52; Ex. 3 at 559, 563, 572; Ex. 5 at 5–12. That same record also reveals that Petitioner suffered from other health issues prior to vaccination, which could explain his injury, including neonatal intensive care and surgical intervention, a chromosomal deletion, asthma, retinopathy, chronic constipation, chronic

---

[3] Because this claim's good faith is not in dispute, I do not include a discussion of the standards applicable to that fees prong.

[4] *See also Chuisano*, 116 Fed. Cl. at 285 (cautioning against rigid rules or criteria for reasonable basis because they would subvert the discretion of special masters and stating that an amorphous definition of reasonable basis is consistent with the Vaccine Act as a whole).

lower abdominal pain, urinary retention, eczema, gastroesophageal reflux disease, irritable bowel syndrome, short stature, and developmental delays. Ex. 1 at 79, 85, 86, 96, 761; Ex. 3 at 559–60, 563, 572; Ex. 5 at 160.

Respondent further maintains that Petitioner's allegation of significant aggravation is based on his assertions alone, with no other documentation or evidence of support. Response at 10. And Petitioner was unable to muster expert support for his claim. *Id.* at 13. Respondent also notes that other prior claims in the Program involving this injury of migraine headaches following vaccination have been routinely unsuccessful. *Id.* at 13–15. Respondent points to other subjective factors as calling into question reasonable basis, such as Petitioner's rush to file his petition and obtain counsel before the looming statute of limitations deadline. Response at 15. Overall, in Respondent's view there was a failure to exercise due diligence in filing this claim despite the lack of corroborative evidence. *Id.*

In reaction, Petitioner argues that the claim did in fact possess a reasonable basis. Reply at 2–3. Based on the medical records, Petitioner argues there is no clear evidence of a preexisting migraine or headache disorder. *Id.* Of the referenced medical records cited by Respondent (in the three years prior to vaccination), there was only one visit to the emergency room and three visits to his primary care physician involving headaches, which were attributed to other causes like his impacted wisdom teeth, TMJ disorder, sinusitis, and recovering from the flu. *Id.* Although Petitioner was seen shortly before his vaccination for headaches, at that time no medication was recommended. *Id.*

After vaccination, on August 8, 2016, Petitioner's condition became worse, leading a neurologist to start him on prescription medication (Topamax) for his migraines. Reply at 2–3; Ex. 3 at 536. Petitioner further contends that he exercised due diligence in obtaining representation, as Petitioner's counsel had evidence of receipt of the covered vaccine, medical records of Petitioner's post-vaccination condition, Petitioner's provider linking the injury to the vaccine, and the warning label that the injury suffered is a known adverse reaction to the vaccine. Reply at 4. Though Petitioner does not contend other claims of this nature were successful in the past, he specifically points out that one of the cases cited by Respondent involved a distinguishable condition (hydrocephalus), not simply chronic migraine headaches. *See Rolshoven v. Sec'y of Health & Hum. Servs.,* No. 14-439V, 2018 WL 1124737 at *19–22 (Fed. Cl. Spec. Mstr. Jan. 11, 2018) (denying entitlement in case alleging that cerebri/idiopathic intracranial hypertension, persistent/chronic headaches, and other adverse reactions due to the receipt of a second dose of the human papillomavirus vaccine).

Respondent raises reasonable objections to the claim's viability. In particular, a claim that the vaccines in questions triggered a new injury, headaches, is belied by the record completely, since Petitioner suffered from headaches pre-vaccination that cannot be fully attributed to other

4

causes. The claim of worsening after vaccination, however, has more facial support, and significant aggravation of preexisting headaches *was* alleged at the outset of the case. Petition at 1. No expert or medical literature filed, but at the same time the claim's dismissal was occasioned in part by counsel's inability to contact him (and in any event reasonable basis is not dependent on obtaining expert support for a claim). And while this kind of claim has not been routinely successful, it also is not the kind of claim that the Program has litigated in full so many times (autism as the best example) that Program counsel can be deemed to be on notice that the claim lacks viability regardless of a petitioner's views or arguments.

Overall, there was sufficient objective basis in support of the claim (a standard that does *not* require the claimant to show a likelihood of success) to entitle her to fees and costs award. There is evidence that Petitioner had a temporary flare of headaches around the time of vaccination. Response at 11; Reply at 4; Ex. 1 at 85, 66, 91, 624; Ex. 4 at 14. In addition, the significant aggravation claim was based on objective evidence as well. I otherwise find a fees award appropriate, despite the fact that Petitioner did not prevail.

## II.     Calculation of Fees

Determining the appropriate amount of the fees award is a two-part process. The first part involves application of the lodestar method—"multiplying the number of hours reasonably expended on the litigation times a reasonable hourly rate." *Avera v. Sec'y of Health & Hum. Servs.*, 515 F.3d 1343, 1347–48 (Fed. Cir. 2008) (quoting *Blum v. Stenson*, 465 U.S. 886, 888 (1984)). The second part involves adjusting the lodestar calculation up or down to take relevant factors into consideration. *Id.* at 1348. This standard for calculating a fee award is considered applicable in most cases where a fee award is authorized by federal statute. *Hensley v. Eckerhart*, 461 U.S. 424, 429–37 (1983).

An attorney's reasonable hourly rate is determined by the "forum rule," which bases the proper hourly rate to be awarded on the forum in which the relevant court sits (Washington, D.C., for Vaccine Act cases), *except* where an attorney's work was not performed in the forum and there is a substantial difference in rates (the so-called "*Davis* exception"). *Avera*, 515 F.3d at 1348 (citing *Davis Cty. Solid Waste Mgmt. & Energy Recovery Special Serv. Dist. v. U.S. Envtl. Prot. Agency*, 169 F.3d 755, 758 (D.C. Cir. 1999)). A 2015 decision established the hourly rate ranges for attorneys with different levels of experience who are entitled to the forum rate in the Vaccine Program. *See McCulloch v. Sec'y of Health & Hum. Servs.*, No. 09-293V, 2015 WL 5634323, at *19 (Fed. Cl. Spec. Mstr. Sept. 1, 2015).

Petitioner requests the following rates for his attorney and paralegal, based on the years work was performed:

5

|  | **2019** | **2020** | **2021** | **2022**[5] |
|---|---|---|---|---|
| **Mark Sadaka (Attorney)** | $405.00 | $422.00 | $444.00 | $444.00 |
| **Paralegal** | $156.00 | $163.00 | $172.00 | $172.00 |

ECF No. 44 at 4.

Mr. Sadaka practices in Englewood, NJ—a jurisdiction that has been deemed "in forum." Accordingly, he is entitled to the rates established in *McCulloch*. *See Brown v. Sec'y of Health & Hum. Servs.*, No. 20-375V, 2021 WL 5070155, at *4 (Fed. Cl. Spec. Mstr. Sept. 20, 2021). The requested rates for the attorney are also consistent with what has previously been awarded in accordance with the Office of Special Masters' fee schedule.[6] *See Rose v. Sec'y of Health & Hum. Sevs.*, No. 17-1770V, 2021 WL 3053035, at *3 (Fed. Cl. Spec. Mstr. June 28, 2021). I thus find no cause to reduce them in this instance. I also deem the time devoted to the matter reasonable, and will therefore award it without adjustment.

### III.   Calculation of Attorney's Costs

Just as they are required to establish the reasonableness of requested fees, petitioners must also demonstrate that requested litigation costs are reasonable. *Presault v. United States*, 52 Fed. Cl. 667, 670 (2002); *Perreira v. Sec'y of Dep't of Health & Hum. Servs.*, 27 Fed. Cl. 29, 34 (1992). Reasonable costs include the costs of obtaining medical records and expert time incurred while working on a case. *Fester v. Sec'y of Health & Hum. Servs.*, No.10-243V, 2013 WL 5367670, at *16 (Fed. Cl. Spec. Mstr. Aug. 27, 2013). When petitioners fail to substantiate a cost item, such as by not providing appropriate documentation to explain the basis for a particular cost, special masters have refrained from paying the cost at issue. *See, e.g.*, *Gardner-Cook v. Sec'y of Health & Hum. Servs.*, No. 99-480V, 2005 WL 6122520, at *4 (Fed. Cl. Spec. Mstr. June 30, 2005).

Petitioner seeks $1,042.27 in outstanding costs, including medical record retrieval costs. ECF No. 44-1 at 26–27. The medical records retrieval costs and other requested costs in this matter appear reasonable, and they shall also be awarded in full without reduction.

---

[5] I would note that Petitioner's Motion only requested attorney's fees up until 2021, but Mr. Sadaka and his paralegal also billed for 2022. ECF No. 44.1 at 25–26.

[6] OSM Attorneys' Forum Hourly Rate Fee Schedules, https://www.uscfc.uscourts.gov/node/2914 (last visited Mar. 22, 2021).

## CONCLUSION

Based on the foregoing, and in the exercise of the discretion afforded to me in determining the propriety of a final fees award, I **GRANT** Petitioner's Motion for Attorney's Fees and Costs in its entirety, and award a total of **$23,741.57,** reflecting $22,699.30 in attorney's fees and $1,042.27 in costs in the form of a check made jointly payable to Petitioner and his attorney Mr. Mark Sadaka.

In the absence of a motion for review filed pursuant to RCFC Appendix B, the clerk of the court **SHALL ENTER JUDGMENT** in accordance with the terms of this decision.[7]

**IT IS SO ORDERED.**

s/ Brian H. Corcoran
Brian H. Corcoran
Chief Special Master

---

[7] Pursuant to Vaccine Rule 11(a), the parties may expedite entry of judgment if (jointly or separately) they file notices renouncing their right to seek review.